IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ADP, LLC, § § §<br>  Plaintiff, § §<br>v. § §  CIVIL ACTION NO. 5:19cv00015[RWS]<br>  § §<br>UNILOC LUXEMBOURG S.A., and §<br>UNILOC USA, INC., §  REDACTED<br>  § §<br>  Defendants. § | |

# COMPLAINT

Plaintiff ADP, LLC ("ADP") as and for its complaint against Defendants Uniloc Luxembourg S.A. and Uniloc USA, Inc. (collectively herein, "Uniloc") alleges as follows:

## INTRODUCTION

1. This is an action for ADP to recover its losses, costs, and expenses as a third-party beneficiary under the indemnification clause of a patent assignment agreement between Uniloc Luxembourg S.A. and International Business Machines Corporation ("IBM"). This is also an action for ADP to recover its losses, costs, and expenses due to Uniloc's willful and tortious interference with ADP's business relationships.

2. In early 2016, IBM assigned certain patents to Uniloc Luxembourg S.A. As a condition of that assignment, IBM's largest customers were not to be sued by Uniloc. An indemnification provision in favor of these customers ensured that Uniloc alone would bear the risk if a large IBM customer were nonetheless sued for infringement of the assigned patents.

3. Uniloc obtained from IBM an erroneous representation that "ADP" was not such a customer, even though—as Uniloc has always known—ADP uses millions of dollars of IBM hardware and software to implement the very features accused by Uniloc of infringement. Uniloc

then sued ADP and other large IBM customers in this Court but improperly withheld the assignment agreement from those defendants for nearly one year, settling multiple cases without informing ADP and other IBM customers of their rights and protections. Finally, even after ADP learned the terms of the IBM assignment and promptly obtained a license from IBM pursuant to that assignment agreement, Uniloc *still* maintained its infringement claims against ADP, forcing ADP to move for dismissal based on mootness at the Federal Circuit.

4. ADP should never have been sued for infringement of these IBM patents. Yet Uniloc deliberately withheld key information from both IBM and ADP in pursuit of a settlement to which it was never entitled. ADP incurred more than two years of avoidable litigation expenses, both internal and external, and had to repeatedly and needlessly represent to its customers in public filings that it was a litigation defendant, damaging important business relationships. The IBM assignment and this Court's discovery orders were meant to preclude this very behavior. Together, they squarely assign to Uniloc all liability for their violation.

## THE PARTIES

5. Plaintiff ADP, LLC is a Delaware corporation having a principal place of business in Roseland, NJ.

6. Defendant Uniloc USA, Inc. is a Texas corporation having a regular and established place of business at Legacy Town Center I, Suite 380, 7160 Dallas Parkway, Plano, Texas 75024.

7. Defendant Uniloc Luxembourg S.A. is a Luxembourg public limited liability company having a principal place of business at 15, Rue Edward Steichen, 4th Floor, L-2540, Luxembourg (R.C.S. Luxembourg B159161).

## JURISDICTION AND VENUE

8.  The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the Plaintiff and the Defendants. This Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

9.  Further, Uniloc Luxembourg S.A. and Uniloc USA, Inc. previously availed themselves of this Court's original jurisdiction to adjudicate a patent infringement suit, *Uniloc Luxembourg SA et. al. v. ADP, LLC*, 2:16-cv-741 (E.D. Tex.), giving rise to the causes of action in this complaint. This Court thus has pendent jurisdiction over the instant action.

10. This Court has personal jurisdiction over the parties as each has transacted business in this District that gives rise to this action.

11. Venue is proper in this District under 28 U.S.C. § 1391 as a substantial part of the events giving rise to this action occurred within this District. Specifically, the previous suit by Uniloc Luxembourg S.A. and Uniloc USA, Inc. against ADP in this Court, *Uniloc Luxembourg SA et. al. v. ADP, LLC*, 2:16-cv-741 (E.D. Tex.), gives rise to causes of action in this complaint.

12. Venue is also proper in this District under 28 U.S.C. § 1391 because Uniloc USA, Inc. resides in this district and Uniloc Luxembourg S.A., is not a resident of the United States.

## GENERAL ALLEGATIONS

**A.   Uniloc Purchases the Cox Patents**

13. Uniloc is a nonpracticing patent assertion entity that purchased a portfolio of IBM patents via a formal assignment from IBM to Uniloc Luxembourg S.A., effective February 3, 2016 (hereinafter referred to as the "2016 Assignment")[1]. (*See* 2:16-cv-741-RWS D.I. 310 at 1.)

---

[1] Uniloc first produced the 2016 Assignment to ADP with confidentiality designations pursuant to a protective order in *Uniloc Luxembourg SA et. al. v. ADP, LLC*. *See* 2:16-cv-741 D.I. 133. Sealed copies of the 2016 Assignment were thereafter made of record in that action and in its appeal. *See* 2:16-cv-741-RWS D.I. 292-2 at Exh. E; *Uniloc USA, Inc. v. ADP, LLC*, 18-1132 (Fed. Cir.) D.I. 31 at 22-34. ▮

14. The 2016 Assignment was not publicly recorded.

15. In Section 1.1 of the 2016 Assignment, IBM assigned to Uniloc Luxembourg S.A. "all right, title and interest in and to the Assigned Patents that IBM has as of the Effective Time & Date, including the right to sue for injunctive relief and damages for infringement of any of the Assigned Patents," but subject to an express reservation of rights by IBM in Section 2.1 of the 2016 Assignment. (2016 Assignment at 1–2; *see* 2:16-cv-741-RWS D.I. 310 at 1–2.)

16. In Section 2.1 of the 2016 Assignment, IBM "reserve[d] and retain[ed]," and was expressly granted by Uniloc Luxembourg S.A., a worldwide license under the Patents, which included "the right to grant, without notice or accounting and with any required consents hereby deemed granted by [Uniloc Luxembourg], sublicenses and releases of the same or lesser scope" to six enumerated classes of entities, including "any IBM Strategic Partners and their Subsidiaries." (2016 Assignment at 2; Uniloc May 21 Slides at 2; 2:16-cv-741-RWS D.I. 310 at 2.)

17. In Section 5 of the 2016 Assignment, the term "IBM Strategic Partners" is defined to include *inter alia* customers of IBM that had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years prior to the execution of the 2016 Assignment. (2016 Assignment at 8; Uniloc May 21 Slides at 2.)

---

ADP hereby incorporates Uniloc's publicly-filed copy of the 2016 Assignment, ▮▮▮▮▮ as if attached to this complaint and refers hereafter to its internal pagination. Where appropriate, ADP also cites here to certain portions of the 2016 Assignment made public without designation by Uniloc in open court at a May 21, 2018 hearing in 2:16-cv-741. (*See* Exhibit 1 (hereinafter referred to as "Uniloc May 21 Slides").) However, in an abundance of caution and in view of the protective order entered by this Court in 2:16-cv-741, ADP has not filed the 2016 Assignment as an exhibit to this Complaint and has filed this Complaint under seal.

18. Section 5 further states, however, that "[f]or the avoidance of doubt, the companies listed in List A of Exhibit C do not meet the definition of 'IBM Strategic Partner.'" (2016 Assignment at 8; Uniloc May 21 Slides at 2; *see* 2:16-cv-741-RWS D.I. 310 at 2.)

19. List A of Exhibit C to the 2016 Assignment includes the names of 55 entities, including: "ABB Ltd.," "ADP," "Cerner," "Concur Technologies," "Fiserv," "Misys," and "Salesforce.com." (2016 Assignment at 12–13; Uniloc May 21 Slides at 3.)

20. ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years prior to the execution of the 2016 Assignment.

21. ADP was thus an IBM Strategic Partner when the 2016 Assignment was negotiated and executed.

22. ADP has also remained an IBM Strategic Partner through the filing of this Complaint.

23. On information and belief, each of ABB Ltd., Cerner, Concur Technologies, Fiserv, Misys, and Salesforce.com were also IBM Strategic Partners or otherwise fit one of the six enumerated classes of entities entitled to sublicenses, releases, and/or covenants from IBM under the 2016 Assignment.

24. Section 4.3 of the 2016 Assignment states, "  " (2016 Assignment at 5.)

25. Section 5 of the 2016 Assignment defines the term "Licensee" to include, inter alia, "

███████████████████████████████████████████████████████████████." (2016 Assignment at 8.)

26. On February 22, 2016, Uniloc Luxembourg licensed the Patents to Uniloc USA, Inc. (2:16-cv-741-RWS D.I. 306-2; D.I. 310 at 1–2.)

**B.  Uniloc Asserts the Patents Against ADP**

27. On April 12, 2016, Uniloc filed seven lawsuits in the Eastern District of Texas alleging infringement of one or more of the Patents.

28. On July 8, 2016, Uniloc filed five more lawsuits in the Eastern District of Texas alleging infringement of one or more of the Patents. One of the July 8, 2016 lawsuits was filed against ADP.

29. Uniloc would ultimately file eighteen more suits in the Eastern District of Texas between August 2, 2016 and May 9, 2017 alleging infringement of one or more of the Patents.

30. On information and belief, Uniloc knew or had reason to know as of the filing of its July 8, 2016 Complaint against ADP that ADP was an IBM customer.

31. Uniloc's July 8, 2016 Complaint against ADP included a paragraph (22) accusing ADP of using IBM's "Websphere" application to infringe the Patents. (2:16-cv-741-RWS D.I 1, ¶ 22.)

32. On information and belief, the source of information for Paragraph 22 of Uniloc's complaint against ADP was the chapter "Deploying your Applications on Websphere Application Server 7.0" in the book "WebSphere Application Server 7.0 Administration Guide."

33. That chapter expressly refers to IBM, the designer and vendor of WebSphere, but makes no reference to ADP.

34. Thus, on information and belief, Uniloc believed as of the filing of its complaint that ADP was an IBM customer.

35. Further, on information and belief, Uniloc believed as of the filing of its complaint that ADP was an IBM customer commensurate with the scale of Uniloc's infringement allegations and settlement demands.

36. Uniloc's July 8, 2016 complaint did not mention IBM's reserved rights to sublicense the Patents and did not include a copy of the 2016 Assignment.

37. On August 9, 2016, ADP's counsel contacted Uniloc's counsel to "better understand what Uniloc is seeking." Uniloc's counsel Kevin Gannon responded the following day that "Uniloc has requested that an ADP principal contact Sean Burdick, Uniloc's President and IP Counsel, directly to discuss."

38. At that time, Uniloc's counsel did not inform ADP's counsel of IBM's reserved rights to sublicense the Patents and did not provide ADP's counsel with a copy of the 2016 Assignment.

39. During the week of September 26, 2016, ADP's counsel spoke by telephone with Uniloc's counsel about procedural requirements in their case. On that telephone call, ADP's counsel again raised the question of Uniloc's demand in its case against ADP. Uniloc's counsel responded with an approximate dollar amount for which its client would likely resolve the case.

40. Again at that time, Uniloc's counsel did not inform ADP's counsel of IBM's reserved rights to sublicense the Patents, and did not provide ADP's counsel with a copy of the 2016 Assignment.

**C. Uniloc Deliberately Withholds The 2016 Assignment From ADP To Extract a Settlement**

41. On November 21, 2016, District Judge Rodney Gilstrap (then overseeing ADP's case) entered a Docket Control Order requiring that all document production between the parties be substantially completed by May 18, 2017. (2:16-cv-741-RWS D.I. 87.)

42. On December 8, 2016, Judge Gilstrap entered a Discovery Order requiring that, "Without awaiting a discovery request, each party will . . . produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." (2:16-cv-741-RWS D.I. 106, at 3.)

43. The 2016 Assignment was unquestionably relevant to the claims in Uniloc's action against ADP, as it provided the basis for Uniloc's purported ownership of the patents-in-suit and standing to sue on them. (*See* 2:16-cv-741-RWS D.I. 310 *passim.*)

44. Moreover, the 2016 Assignment was unquestionably relevant to defendants like ADP, since "ADP" was expressly listed therein. (2016 Assignment at 12; 2:16-cv-741-RWS D.I. 310 at 2.)

45. Nevertheless, on December 8, 2016, Uniloc did not produce the 2016 Assignment to ADP, nor inform ADP's counsel of IBM's reserved rights to sublicense the Patents.

46. On January 6, 2017, Uniloc reported to this Court that it had agreed to settle its litigation with Salesforce.com. (2:16-cv-741-RWS D.I. 127.) This Court dismissed the suit against Salesforce.com on January 10, 2017. (2:16-cv-741-RWS D.I. 128.)

47. On information and belief, Salesforce.com was an IBM Strategic Partner as defined in the 2016 Assignment.

48. On information and belief, prior to its settlement with Salesforce.com, Uniloc neither provided Salesforce.com with a copy of the 2016 Assignment nor informed Salesforce.com or its counsel of IBM's reserved rights to sublicense the Patents.

49. On May 23, 2017, Uniloc first produced a copy of the 2016 Assignment to ADP's counsel. (*See* Exhibit 2 (July 17, 2017 Email from J. Foster to M. Moffa).)

50. Uniloc produced the 2016 Assignment *sua sponte*, after the Court's May 18, 2017 deadline for the completion of document production.

51. When Uniloc finally produced a copy of the 2016 Assignment it was designated by Uniloc as "Attorneys Eyes Only" under the Protective Order entered in the case.

52. ADP's counsel subsequently asked Uniloc to redesignate the 2016 Assignment as "Confidential" so that ADP's counsel could discuss it with ADP's in-house attorneys, noting that the Attorneys Eyes Only designation was impeding their ability to advise their client "regarding its license and indemnification rights thereunder." (Exhibit 2.)

53. Uniloc's counsel delayed, and then refused ADP's request, even after ADP made clear to Uniloc that, under its counsel's analysis, ADP was "a Licensee under the agreement." (*Id.*)

54. On July 19, 2017, after Uniloc's recalcitrance forced ADP to prepare a motion for redesignation, Uniloc finally agreed that a redacted copy of the 2016 Assignment could be shared with ADP's in-house counsel on a confidential basis. (Exhibit 3 (July 19, 2017 Email from M. Moffa to J. Foster).)

**D.   Uniloc Bargains With IBM For Additional Patents Before Releasing ADP From Suit**

55. Once ADP's in-house counsel learned of IBM's reserved rights to sublicense the Patents, in-house counsel contacted IBM. ADP's in-house counsel confirmed that ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years preceding the 2016 Assignment, and asked IBM why ADP had been listed in List A of Exhibit C of the 2016 Assignment.

56. IBM then approached Uniloc in September, 2017 to request that Uniloc settle its suit against ADP. (*See Uniloc v. ADP,* 18-1132 (Fed. Cir.) D.I. 46-1 at 1.)

57. From July, 2017 through September, 2017, ADP and its counsel repeatedly raised to Uniloc the argument that ADP should be properly licensed and released from suit as an IBM customer, including at an August, 2017 court-ordered mediation attended by representatives of both parties.

58. Nevertheless, from July, 2017 through September, 2017, Uniloc maintained its suit against ADP, even though (as this Court has found) Uniloc could have filed a motion for a 30-day stay of the case pending settlement negotiations. (2:16-cv-741-RWS D.I. 310 at 12.)

59. Uniloc even continued to seek a settlement payment from ADP, including at the August, 2017 mediation.

60. On information and belief, during the period from July, 2017 through September, 2017, Uniloc conducted private negotiations with IBM for the assignment of 26 additional IBM patents to Uniloc in exchange for Uniloc's consent to remove "ADP" from List A of Exhibit C.

61. Uniloc withheld from ADP the details of its negotiations with IBM and withheld from this Court the fact that a forthcoming amendment to the assignment agreement would have (in Uniloc's view) affected its standing to maintain this case. (2:16-cv-741-RWS D.I. 310 at 12.)

62. On September 27, 2017, Uniloc and IBM executed an amendment to the 2016 Assignment (hereinafter, the "2017 Amendment") which purported to confirm IBM's right to license ADP under the 2016 IBM-Uniloc Assignment by removing "ADP" from List A of Exhibit C.[2] (2017 Amendment at 1; 2:16-cv-741-RWS D.I. 310 at 2; Uniloc May 21 Slides at 3.)

---

[2] Uniloc first provided the 2017 Amendment to ADP by email with confidentiality designations pursuant to the protective order in *Uniloc Luxembourg SA et. al. v. ADP, LLC*. *See* 2:16-cv-741 D.I. 133. Sealed copies of the 2017 Amendment were thereafter made of record in that action and in its appeal. *See* 2:16-cv-741-RWS D.I. 292-2 at Exh. I; *Uniloc USA, Inc. v. ADP, LLC*, 18-1132 (Fed. Cir.) D.I. 31 at 87–88. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ADP hereby incorporates Uniloc's publicly-filed copy of the 2017 Amendment, ▓▓▓▓▓▓ as if attached to this complaint and refers hereafter to its internal pagination. Where

63. That amendment also removed other names of companies which, on information and belief, were IBM Strategic Partners or otherwise fit one of the six enumerated classes of entities entitled to sublicenses, releases, and/or covenants from IBM under the 2016 Assignment, including "ABB Ltd.," "Cerner," "Fiserv," and "Misys." (2017 Amendment at 1; Uniloc May 21 Slides at 3.)

64. On October 1, 2017, IBM assigned 26 patents to Uniloc Luxembourg S.A. (Exhibit 4 (Patent Office Recordation of IBM Assets Assigned to Uniloc).)

65. On information and belief, these patents were assigned to Uniloc Luxembourg S.A. in exchange for Uniloc Luxembourg S.A.'s agreement to execute the 2017 Amendment. (*See* 18-1132 (Fed. Cir.) D.I. 46-1 at 1 ("In return for certain consideration from IBM, Uniloc agreed to dismiss the ADP action with prejudice.").)

**E.   ADP Receives a License From IBM, But Uniloc Refuses to Dismiss ADP From Suit and Instead Continues to Subject ADP to Litigation**

66. At least as of September 27, 2017, Uniloc Luxembourg S.A. and Uniloc USA Inc. each understood ADP to be a third party to which IBM reserved the right under the 2016 Assignment to grant licenses, immunities, covenants not to sue, and other rights under the Patents.

67. As Uniloc would later represent to this Court, "By virtue of the September 27, 2017, Amendment, ADP had the ability to obtain a license from another party (IBM) with the right to grant it." (2:16-cv-741-RWS, D.I. 302 at 1.)

---

appropriate, ADP also cites here to certain portions of the 2017 Amendment made public without designation by Uniloc in open court at the May 21, 2018 hearing in 2:16-cv-741. However, in an abundance of caution and in view of the protective order entered by this Court in 2:16-cv-741, ADP has not filed the 2017 Amendment as an exhibit to this Complaint and has filed this Complaint under seal.

68. Moreover, Uniloc knew or should have known at all times relevant to this complaint that ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years preceding the 2016 Assignment and thus was entitled to a license from IBM, notwithstanding Uniloc's improper inducement of IBM to accede to the listing of "ADP" on List A of Exhibit C to the 2016 Assignment prior to September 27, 2017.

69. Nevertheless, Uniloc did not dismiss its suit against ADP on September 27, 2017 or at any time thereafter.

70. In fact, Uniloc did not even inform the Court of the 2017 Amendment—even though Uniloc believed that such Amendment affected its standing to maintain a suit against ADP —until over three months after the 2017 Amendment was executed. (2:16-cv-741-RWS, D.I. 310 at 12–13.)

71. On September 28, 2017, this Court entered an order finding all claims of the Patents asserted against ADP to be drawn to unpatentable subject matter under 35 U.S.C. § 101. (2:16-cv-741-RWS, D.I. 267.) A corresponding Final Judgment was entered in favor of ADP on October 20, 2017. (2:16-cv-741-RWS, D.I. 269.)

72. On October 27, 2017, IBM granted a complete license and release to the Patents to Automatic Data Processing, Inc. with a right to grant sublicenses to its subsidiaries, including ADP. (2:16-cv-741-RWS, D.I. 310 at 2 n.1.)

73. Uniloc has since admitted that ADP is licensed and released under the Patents. (*See* 18-1132 (Fed. Cir.) D.I. 36 ("Uniloc agrees with ADP that the appeal has become moot, by virtue of the license and release from IBM.").)

74. On November 20, 2017, Uniloc appealed the October 20, 2017 final judgement in favor of ADP. (2:16-cv-741-RWS, D.I. 280.)

75. On November 27, 2017, ADP's counsel contacted Uniloc's counsel and informed him that IBM had granted ADP a complete license and release to all patents in that suit. (Exhibit 5 (November 27, 2017 email to Paul Hayes).) ADP's counsel insisted that Uniloc withdraw its appeal against ADP, and cautioned that if Uniloc did not, ADP "would seek to recover from Uniloc" *inter alia* "fees incurred in this campaign, under all governing agreements (including section 4.3 of the [2016 Assignment])." (*Id.*)

76. Nevertheless, Uniloc did not withdraw its appeal against ADP on November 28, 2017 or at any time thereafter.

77. On January 5, 2018, ADP moved the Federal Circuit to dismiss Uniloc's appeal. (18-1132 (Fed. Cir.) D.I. 29.) Uniloc opposed ADP's motion. (18-1132 (Fed. Cir.) D.I. 36.)

78. Separately, on January 11, 2018, Uniloc filed an emergency motion in this Court seeking an indicative ruling that the Court had lacked jurisdiction to issue its September 28, 2017 order in favor of ADP since, in Uniloc's view, Uniloc USA, Inc. lost standing on September 27, 2017 to sue ADP once ADP held the right to obtain a license from IBM. (2:16-cv-741-RWS D.I. 218; *see also* D.I. 302.) ADP responded to Uniloc's motion on January 18. Additional briefing on the motion was provided by Uniloc and ADP in April and May of 2018, and a motion hearing was held.

79. On June 27, 2018, this Court denied Uniloc's motion in its entirety, on the basis that the owner of the Patents, Uniloc Luxembourg S.A., was at all times a party with standing to sue ADP for infringement. (2:16-cv-741-RWS D.I. 310.)

80. On August 2, 2018, the Federal Circuit granted ADP's motion and dismissed Uniloc's appeal against ADP. (18-1132 (Fed. Cir.) D.I. 49.)

### F.     ADP Demands That Uniloc Indemnify ADP Under Section 4.3 of the 2016 Assignment

81.     On January 12, 2018, ADP wrote Uniloc to demand that Uniloc indemnify ADP from "all losses, costs, and expenses from September 28, 2017 through the present day arising from Uniloc's maintenance of its claims against ADP" pursuant to section 4.3 of the 2016 Assignment. (Exhibit 6 (January 12, 2018 Letter from ADP to Uniloc Demanding Indemnification).)

82.     ADP made clear that its demand "extend[ed] to all losses, costs, and expenses which may yet be accrued in this matter until such time as Uniloc ceases to maintain its claims against ADP under" the Patents. (*Id.*)

83.     ADP also directed Uniloc to the 60-day deadline for payment in Section 2.1 of the 2016 Assignment, which if not met by Uniloc would result in IBM receiving the right to license all "third parties involved in any activities relating to or arising from defense, enforcement, or licensing" under any of the Patents. (*Id.*)

84.     Uniloc did not respond to ADP's January 12, 2018 letter, and did not indemnify ADP.

85.     On January 28, 2019, ADP reminded Uniloc that "ADP is entitled to indemnification from Uniloc for *all* losses, costs, and expenses arising from its claims, from July 8, 2016 through the present day, without exception," because Uniloc "has known since at least September 27, 2017 that ADP was a Licensee as defined in the Agreement" but "[n]evertheless . . . maintained multiple claims against ADP for almost a year thereafter, through August 2, 2018." (Exhibit 7 (January 28, 2019 Letter from ADP to Uniloc Demanding Indemnification).)

86.     To date, Uniloc has not responded to ADP's January 28, 2019 letter nor agreed to indemnify ADP.

## **FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

87. ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

88. Uniloc maintained claims against ADP under the Patents from July 8, 2016 through August 2, 2018, causing ADP to incur losses of at least $1,580,000 in legal expenses, $287,000 in costs, and approximately $700,000 worth of employee time and discovery-related litigation expenses.

89. Because Uniloc knew at least as early as September 27, 2017 that IBM reserved the right to grant ADP a sublicense and release under the Patents but did not withdraw its action(s) against ADP, the 2016 Assignment obligates Uniloc to indemnify ADP from these losses, costs and expenses (including employee time and attorneys' fees).

90. Despite multiple demands, Uniloc has refused to indemnify ADP.

91. As a direct and proximate result of Uniloc's breach of its indemnity obligations under the 2016 Assignment, ADP has been damaged in the aggregate amount of at least approximately $2,600,000, together with prejudgment interest at the maximum rate permitted by law.

92. Further, because of Uniloc's breach of its indemnity obligations under the 2016 Assignment, ADP has been required to incur attorneys' fees and other costs to protect its interests.

93. The 2016 Assignment is a valid contract between IBM and Uniloc Luxembourg S.A.

94. Uniloc USA, Inc. served as Uniloc Luxembourg S.A.'s agent in breaching the indemnity obligations under the 2016 Assignment by *inter alia* maintaining claims against ADP under the Patents.

95. Indemnification clause 4.3 of the 2016 Assignment was intended to directly and immediately benefit IBM customers like ADP subjected to infringement suits on patents for which IBM could license and/or release them.

96. ADP is an intended third-party beneficiary of the 2016 Assignment who has the right to sue for Uniloc's breach of its indemnity obligations.

**SECOND CLAIM FOR RELIEF**
**(Tortuous Interference with Contract)**

97. ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

98. At least as of the filing of its July 8, 2016 complaint, Uniloc was aware that ADP was a world-leading provider of human capital management solutions with billions of dollars in annual business, and that ADP was an IBM customer.

99. Uniloc knew or should have known that ADP had business contracts with many worldwide customers.

100. With intent or at least willful blindness, Uniloc induced IBM to misrepresent that ADP was not a sufficiently-sized customer of IBM so as to be entitled to a sublicense under IBM's patents when Uniloc purchased those patents from IBM.

101. With intent or at least reckless indifference, Uniloc then withheld relevant documents from ADP in violation of this Court's Discovery Order in the hopes of extracting a settlement from ADP before IBM could sublicense ADP.

102. Uniloc unjustifiably maintained litigations against ADP for a two-year period, causing ADP to repeatedly represent to its customers in public filings that it was a litigation defendant in a suit that was baseless and avoidable.

103. Uniloc therefore unlawfully and maliciously interfered with ADP's business contracts in order to extract a settlement of its unjustified litigations.

104. As a direct and proximate result of Uniloc's interference with ADP's business contracts, ADP has been damaged in an amount to be determined at trial, together with prejudgment interest at the maximum rate permitted by law.

105. Further, because of Uniloc's interference with ADP's business contracts, ADP has been required to incur attorneys' fees and other costs to protect its interests.

## THIRD CLAIM FOR RELIEF
### (Tortuous Interference with Prospective Economic Advantage)

106. ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

107. At least as of the filing of its July 8, 2016 complaint, Uniloc was aware that ADP was a world-leading provider of human capital management solutions with billions of dollars in prospective annual business, and that ADP was an IBM customer.

108. Uniloc knew or should have known that ADP had prospective business relationships with many customers.

109. With intent or at least willful blindness, Uniloc induced IBM to misrepresent that ADP was not a sufficiently-sized customer of IBM so as to be entitled to a sublicense under IBM's patents when Uniloc purchased those patents from IBM.

110. With intent or at least reckless indifference, Uniloc then withheld relevant documents from ADP in violation of this Court's Discovery Order in the hopes of extracting a settlement from ADP before IBM could sublicense ADP.

111. Uniloc unjustifiably maintained litigations against ADP for a two-year period, causing ADP to repeatedly represent to its customers in public filings that it was a litigation defendant in a suit that was baseless and avoidable.

112. Uniloc therefore unlawfully and maliciously interfered with ADP's prospective business relationships in order to extract a settlement of its unjustified litigations.

113. As a direct and proximate result of Uniloc's interference with ADP's prospective business relationships, ADP has been damaged in an amount to be determined at trial, together with prejudgment interest at the maximum rate permitted by law.

114. Further, because of Uniloc's interference with ADP's prospective business relationships, ADP has been required to incur attorneys' fees and other costs to protect its interests.

**FOURTH CLAIM FOR RELIEF**
**(Liability for Excessive Costs under 28 U.S.C. § 1927)**

115. ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

116. Uniloc maintained claims against ADP under the Patents from July 8, 2016 through August 2, 2018, causing ADP to incur losses of at least $1,580,000 in legal expenses, $287,000 in costs, and approximately $700,000 worth of employee time and discovery-related litigation expenses.

117. Uniloc knew at filing that ADP was a large IBM customer and that the 2016 Assignment granted sublicense rights to certain IBM customers.

118. Had Uniloc promptly provided the 2016 Assignment to ADP, ADP could have promptly pursued relief from IBM and resolved the case in its early stages.

119. Instead, Uniloc withheld the 2016 Assignment from ADP and its in-house counsel for nearly a year from filing of the complaint, in violation of this Court's Docket Control Order and Discovery Order.

120. In doing so, Uniloc's counsel unreasonably and vexatiously multiplied the proceedings in this case while seeking a settlement from ADP.

121. ADP is entitled to all costs, expenses, and attorneys' fees incurred because of Uniloc's and its counsel's conduct.

**PRAYER FOR RELIEF**

WHEREFORE, ADP prays for relief as follows:

Judgment against Uniloc Luxembourg S.A. and Uniloc U.S.A., Inc. in the amount of at least $2,600,000, together with prejudgment interest at the maximum rate permitted by law;

A declaration that ADP is an indemnitee of Uniloc Luxembourg S.A. for all losses, causes, and expenses arising from claims maintained by Uniloc Luxembourg S.A. or Uniloc U.S.A., Inc under the Patents;

An award of all attorneys' fees incurred in this action;

An award of all costs and disbursements incurred in connection with this action;

An award of post-judgment interest at the maximum rate permitted by law;

An injunction preventing Uniloc Luxembourg S.A. and Uniloc USA, Inc. and their parents, subsidiaries, and affiliates from interfering with ADP's current and prospective business contracts, including through the filing of patent infringement litigations against ADP; and

Such other relief as the Court deems just and proper.

Dated: February 1, 2019

Respectfully submitted,

*/s/ Michael E. Jones*
William J. McCabe
E-Mail: WMcCabe@perkinscoie.com
Matthew J. Moffa
E-Mail: MMoffa@perkinscoie.com
**PERKINS COIE LLP**
30 Rockefeller Plaza, 22nd Floor
New York, NY  10112-0085
Telephone:  (212) 262-6900
Facsimile:  (212) 977-1649

Michael E. Jones
Texas Bar No.:  10929400
E-Mail:  mikejones@potterminton.com
Patrick C. Clutter
Texas Bar No. 24036374
E-Mail: patrickclutter@potterminton.com
**POTTER MINTON, PC**
110 North College Suite 500
Tyler, TX 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846

**ATTORNEYS FOR PLAINTIFF
ADP, LLC**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Motion to File Under Seal filed simultaneously and the Order for same entered in this case.

*/s/ Michael E. Jones*