**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **ADP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:19-cv-15-RWS** |
| | § | |
| **UNILOC LUXEMBOURG S.A., and** | § |  |
| **UNILOC USA, INC.,** | § | |
| | § | **REDACTED** |
| **Defendants.** | § | |

**SECOND AMENDED COMPLAINT**

Plaintiff ADP, LLC ("ADP") as and for its second amended complaint against

Defendants Uniloc Luxembourg S.A. and Uniloc USA, Inc. (collectively herein, "Uniloc")

alleges as follows:

**INTRODUCTION**

1.       This is an action for ADP to recover its losses, costs, and expenses as a third-party

beneficiary under the indemnification clause of a patent assignment agreement between Uniloc

Luxembourg S.A. and International Business Machines Corporation ("IBM").

2.       In early 2016, IBM assigned certain patents to Uniloc Luxembourg S.A. As a

condition of that assignment, IBM's largest customers were not to be sued by Uniloc. An

indemnification provision in favor of these customers ensured that Uniloc alone would bear the

risk if a large IBM customer were nonetheless sued for infringement of the assigned patents.

3.       Uniloc obtained from IBM an erroneous representation that "ADP" was not such

a customer, even though—as Uniloc has always known—ADP uses millions of dollars of IBM

hardware and software to implement the very features accused by Uniloc of infringement. Uniloc

then sued ADP and other large IBM customers in this Court but improperly withheld the

assignment agreement from those defendants for nearly one year, settling multiple cases without informing ADP and other IBM customers of their rights and protections. Finally, even after ADP learned the terms of the IBM assignment and promptly obtained a license from IBM pursuant to that assignment agreement, Uniloc *still* maintained its infringement claims against ADP, forcing ADP to move for dismissal based on mootness at the Federal Circuit.

4.      ADP should never have been sued for infringement of these IBM patents. Yet Uniloc deliberately withheld key information from both IBM and ADP in pursuit of a settlement to which it was never entitled. ADP incurred more than two years of avoidable litigation expenses, both internal and external, and had to repeatedly and needlessly represent to its customers in public filings that it was a litigation defendant, damaging important business relationships. The IBM assignment and this Court's discovery orders were meant to preclude this very behavior. Together, they squarely assign to Uniloc all liability for their violation.

## THE PARTIES

5.      Plaintiff ADP, LLC is a Delaware corporation having a principal place of business in Roseland, New Jersey.

6.      Defendant Uniloc USA, Inc. is a Texas corporation having regular and established places of business at Legacy Town Center I, Suite 380, 7160 Dallas Parkway, Plano, Texas 75024 and 102 North College Avenue, Suite 303, Tyler, Texas 75702.

7.      Defendant Uniloc Luxembourg S.A. is a Luxembourg corporation having a principal place of business at 15, Rue Edward Steichen, 4th Floor, L-2540, Luxembourg (R.C.S. Luxembourg B159161).

8.      In the patent assignment agreement at issue in this suit, Uniloc Luxembourg S.A. refers to itself as a "██████████████████." (Exhibit 18 at 1; Exhibit 19 at 1.)

██████████████

9.      Uniloc Luxembourg S.A. has characterized itself as "a corporation organized and existing under the laws of Luxembourg" in over 50 complaints filed in this district and as a "corporation" in over 100 notices filed with the Patent Trial and Appeal Board through June of 2018.

10.     As Drake Turner, the Chief Financial Officer ("CFO") of Uniloc Luxembourg S.A., testified in the patent infringement suit giving rise to the causes of action in this complaint, ███████████████████████████████ Exhibit 8 (Excerpts from September 11, 2017 Deposition Testimony of Drake Turner) ("Turner Transcript") at 173 (filed under seal).)

11.     As Mr. Turner further testified in that suit, Uniloc Luxembourg S.A.'s corporate structure is ███████████████████████████████████████████ ███████████████████████████████████████████ (*Id.* at 172.)

12.     As Mr. Turner further testified in that suit, around the time of the activities giving rise to the causes of action in this complaint Uniloc Luxembourg S.A. had approximately ███ shareholders collectively holding ████████ shares, including ████████████████ ████████. (*Id.* at 152–153.)

13.     Further, around the time of the activities giving rise to the causes of action in this complaint, Uniloc Luxembourg S.A. represented in a signed Business Combination Agreement filed with the United States Securities and Exchange Commission that Uniloc Luxembourg S.A. had "corporate existence," (Exhibit 9 (August 14, 2015 Business Combination Agreement) at 2), had issued ordinary shares, options, and warrants, (*id.* at 20); held treasury shares, (*id.* at 4); had a board of directors, (*id.* at 22); and had the "corporate power" to consummate a proposed business combination without additional "corporate action," (*id.* at 20, 22).

14.     Uniloc Luxembourg S.A. is not registered to do business in Texas.

████████████████████

15.     On information and belief, Uniloc Luxembourg S.A. has never been registered to do business in Texas.

16.     Nevertheless, Uniloc Luxembourg S.A. has undertaken operations in Texas and throughout the United States.

17.     By Uniloc's own representations to this Court, Uniloc Luxembourg S.A. maintained "corporate headquarters [in] Plano, Texas . . . ." (*Uniloc USA, Inc. v. Electronic Arts, Inc.*, 6:12-cv-463-RWS (E.D. Tex.), D.I. 32, at 1.)

18.     At times, Uniloc Luxembourg S.A. has undertaken operations in Texas and throughout the United States through Uniloc USA, Inc.

19.     Uniloc Luxembourg S.A. and Craig Etchegoyen, its Chief Executive Officer ("CEO"), have each previously represented to this Court that operations of Uniloc Luxembourg S.A. have been undertaken in the United States "through Uniloc USA," that there is "a very close relationship between Uniloc Luxembourg and Uniloc USA," and that Uniloc USA, Inc. "is, in effect, the operating arm of Uniloc Luxembourg in the United States."  (*Uniloc Luxembourg, S.A. v. Broderick*, 4:15-cv-00706-RC (E.D. Tex.), D.I. 16, at 4, 10; D.I. 16-1 ¶5.)

20.     Uniloc Luxembourg S.A. has also previously represented to this Court that "the valuable property of Uniloc Luxembourg, its intellectual property rights, are being protected and enhanced by the actions taken by its operating arm Uniloc USA in the Eastern District of Texas." (4:15-cv-00706-RC (E.D. Tex.), D.I. 16, at 10.)

## JURISDICTION AND VENUE

21.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and complete diversity of citizenship exists between the Plaintiff and the Defendants. This Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

22.     Further, Uniloc Luxembourg S.A. and Uniloc USA, Inc. previously availed themselves of this Court's original jurisdiction to adjudicate a patent infringement suit, *Uniloc Luxembourg SA et. al. v. ADP, LLC*, 2:16-cv-741 (E.D. Tex.), giving rise to the causes of action in this complaint. This Court thus has pendent jurisdiction over the instant action.

23.     This Court has personal jurisdiction over the parties as each has transacted business in this District that gives rise to this action.

24.     Venue is proper in this District under 28 U.S.C. § 1391 as a substantial part of the events giving rise to this action occurred within this District. Specifically, the previous suit by Uniloc Luxembourg S.A. and Uniloc USA, Inc. against ADP in this Court, *Uniloc Luxembourg SA et. al. v. ADP, LLC*, 2:16-cv-741 (E.D. Tex.), and its appeal, give rise to causes of action in this complaint.

25.     Venue is also proper in this District under 28 U.S.C. § 1391 because Uniloc USA, Inc. resides in this district and Uniloc Luxembourg S.A., is not a resident of the United States.

## GENERAL ALLEGATIONS

**A.     Uniloc Purchases the Cox Patents**

26.     Uniloc is a nonpracticing patent assertion entity.

27.     In 2016, Uniloc purchased a portfolio of IBM patents via a formal assignment from IBM to Uniloc Luxembourg S.A., effective February 3, 2016 (Exhibit 18 ("2016 Assignment"); *see* 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 1.)

28.     The purchased patents included U.S. Patent Nos. 6,324,578; 6,510,466; 7,069,293; and 6,728,766 (hereinafter, the "Patents").

29.     The 2016 Assignment was not publicly recorded.

30.     In Section 1.1 of the 2016 Assignment, IBM assigned to Uniloc Luxembourg S.A. "all right, title and interest in and to the Assigned Patents that IBM has as of the Effective Time

& Date, including the right to sue for injunctive relief and damages for infringement of any of

the Assigned Patents," but subject to an express reservation of rights by IBM in Section 2.1 of

the 2016 Assignment. (2016 Assignment at 1–2; *see* 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at

1–2.)

31.     In Section 2.1 of the 2016 Assignment, IBM "reserve[d] and retain[ed]," and was

expressly granted by Uniloc Luxembourg S.A., a worldwide license under the Patents, which

included "the right to grant, without notice or accounting and with any required consents hereby

deemed granted by [Uniloc Luxembourg], sublicenses and releases of the same or lesser scope"

to six enumerated classes of entities, including "any IBM Strategic Partners and their

Subsidiaries." (2016 Assignment at 2; Uniloc May 21 Slides at 2; 2:16-cv-741-RWS (E.D. Tex.)

D.I. 310 at 2.)

32.     In Section 5 of the 2016 Assignment, the term "IBM Strategic Partners" is defined

to include *inter alia* customers of IBM that had purchased at least $10,000,000 of IBM's

products or services (cumulative) over the five years prior to the execution of the 2016

Assignment. (2016 Assignment at 8; Uniloc May 21 Slides at 2.)

33.     Section 5 further states, however, that "[f]or the avoidance of doubt, the

companies listed in List A of Exhibit C do not meet the definition of 'IBM Strategic Partner.'"

(2016 Assignment at 8; Uniloc May 21 Slides at 2; *see* 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at

2.)

34.     List A of Exhibit C to the 2016 Assignment includes the names of 55 entities,

including: "ABB Ltd.," "ADP," "Cerner," "Concur Technologies," "Fiserv," "Misys," and

"Salesforce.com." (2016 Assignment at 12–13; Uniloc May 21 Slides at 3.)

35.     ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years prior to the execution of the 2016 Assignment.

36.     ADP was thus an IBM Strategic Partner when the 2016 Assignment was negotiated and executed.

37.     ADP has also remained an IBM Strategic Partner through the filing of this Complaint.

38.     On information and belief, each of ABB Ltd., Cerner, Concur Technologies, Fiserv, Misys, and Salesforce.com were also IBM Strategic Partners or otherwise fit one of the six enumerated classes of entities entitled to sublicenses, releases, and/or covenants from IBM under the 2016 Assignment.

39.     Section 4.3 of the 2016 Assignment states, " ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████ " (2016 Assignment at 5.)

40.     Section 5 of the 2016 Assignment defines the term "Licensee" to include, inter alia, ████████████████████████████████████████████████ ██████████████████████████████████████████████ " (2016 Assignment at 8.)

41.     Section 2.5 of the 2016 Assignment states that " ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ████████████████ 



██████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████ " (2016 Assignment at 3.)

42.     On February 22, 2016, Uniloc Luxembourg licensed the Patents to Uniloc USA, Inc. (2:16-cv-741-RWS (E.D. Tex.) D.I. 306-2; D.I. 310 at 1–2.)

43.     The license between Uniloc Luxembourg S.A. and Uniloc USA, Inc. expressly granted to Uniloc USA, Inc. *inter alia* the rights to: "Bring any cause of action in its own name, or jointly with [Uniloc Luxembourg S.A.] for infringement of the Licensed Patents"; "Recover damages, profits, awards and collect royalties and other payments of whatever nature for past, present and future infringement"; "Seek injunctive relief and any other remedies of any kind for past, current, and future infringement"; and "Settle any claim, suit or cause of action for infringement of [the Patents]." (2:16-cv-741-RWS (E.D. Tex.) D.I. 306-2 at 2.)

44.     In connection with these rights, the license between Uniloc Luxembourg S.A. and Uniloc USA, Inc. also obligated Uniloc Luxembourg S.A. to pay Uniloc USA, Inc. a "service fee to cover the activities outlined in a Service Agreement agreed to by both parties." (*Id.*)

45.     As Uniloc Luxembourg S.A.'s CFO previously testified in the patent infringement suit giving rise to the causes of action in this complaint, that Service Agreement "████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████ " (Turner Transcript at 73; *see generally* Exhibit 10 (Services Agreement between Uniloc Luxembourg S.A. and Uniloc USA, Inc.) ("Services Agreement") (filed under seal).)

████████████████

46.     As Uniloc Luxembourg S.A.'s CFO also testified in that action, those services include ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████████████ (Turner Transcript at 84-85; *see also* Services Agreement at UNILOC_IBM_2016_1457 (█████████ ██████████████████████████████████ ))

## B.     Uniloc Asserts the Patents Against ADP

47.     On April 12, 2016, Uniloc filed seven lawsuits in the Eastern District of Texas alleging infringement of one or more of the Patents.

48.     On July 8, 2016, Uniloc filed five more lawsuits in the Eastern District of Texas alleging infringement of one or more of the Patents. One of the July 8, 2016 lawsuits was filed by Uniloc Luxembourg S.A. and Uniloc USA, Inc. against ADP.

49.     Uniloc would ultimately file eighteen more suits in the Eastern District of Texas between August 2, 2016 and May 9, 2017 alleging infringement of one or more of the Patents.

50.     On information and belief, Uniloc knew or had reason to know as of the filing of its July 8, 2016 Complaint against ADP that ADP was an IBM customer.

51.     Uniloc's July 8, 2016 Complaint against ADP included a paragraph (22) accusing ADP of using IBM's "Websphere" application to infringe the Patents. (2:16-cv-741-RWS (E.D. Tex.) D.I 1, ¶ 22.)

52.     On information and belief, the source of information for Paragraph 22 of Uniloc's complaint against ADP was the chapter "Deploying your Applications on Websphere Application Server 7.0" in the book "WebSphere Application Server 7.0 Administration Guide." ███████████████████

53.     That chapter expressly refers to IBM, the designer and vendor of WebSphere, but makes no reference to ADP.

54.     Thus, on information and belief, Uniloc believed as of the filing of its complaint that ADP was an IBM customer.

55.     Further, on information and belief, Uniloc believed as of the filing of its complaint that ADP was an IBM customer commensurate with the scale of Uniloc's infringement allegations and settlement demands.

56.     Uniloc's July 8, 2016 complaint did not mention IBM's reserved rights to sublicense the Patents and did not include a copy of the 2016 Assignment.

57.     On August 9, 2016, ADP's counsel contacted Uniloc's counsel to "better understand what Uniloc is seeking." Uniloc's counsel Kevin Gannon responded the following day that "Uniloc has requested that an ADP principal contact Sean Burdick, Uniloc's President and IP Counsel, directly to discuss."

58.     At that time, Uniloc's counsel did not inform ADP's counsel of IBM's reserved rights to sublicense the Patents and did not provide ADP's counsel with a copy of the 2016 Assignment.

59.     During the week of September 26, 2016, ADP's counsel spoke by telephone with Uniloc's counsel about procedural requirements in their case. On that telephone call, ADP's counsel again raised the question of Uniloc's demand in its case against ADP. Uniloc's counsel responded that its client was seeking a settlement between $10 Million and $15 Million.

60.     Again at that time, Uniloc's counsel did not inform ADP's counsel of IBM's reserved rights to sublicense the Patents, and did not provide ADP's counsel with a copy of the 2016 Assignment.

**C.      Uniloc Deliberately Withholds the 2016 Assignment from ADP and Others to Extract Settlements**

61.      On November 21, 2016, District Judge Rodney Gilstrap (then overseeing ADP's case) entered a Docket Control Order requiring that all document production between the parties be substantially completed by May 18, 2017. (2:16-cv-741-RWS (E.D. Tex.) D.I. 87.)

62.      On December 8, 2016, Judge Gilstrap entered a Discovery Order requiring that, "Without awaiting a discovery request, each party will . . . produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." (2:16-cv-741-RWS (E.D. Tex.) D.I. 106, at 3.)

63.      The 2016 Assignment was unquestionably relevant to the claims in Uniloc's action against ADP (and its other actions asserting the Patents against other defendants), as it provided the basis for Uniloc's purported ownership of the patents-in-suit and standing to sue on them. (*See* 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 *passim.*)

64.      Moreover, the 2016 Assignment was unquestionably relevant to defendants like ADP, since "ADP" was expressly listed therein. (2016 Assignment at 12; 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 2.)

65.      Nevertheless, on December 8, 2016, Uniloc did not produce the 2016 Assignment to ADP, nor inform ADP's counsel of IBM's reserved rights to sublicense the Patents.

66.      To the contrary, on December 8, 2016, Uniloc served Initial Disclosures on ADP in which it represented that it "does not currently have in effect any indemnity or insurance agreements relevant to this lawsuit," despite the fact that the 2016 Assignment places an indemnity obligation on Uniloc directly relevant to assertion of the Patents. (Exhibit 11 (Initial Disclosures of Uniloc Luxembourg S.A. and Uniloc USA, Inc. in 2:16-cv-741 (E.D. Tex.)) at 3.)

- 11 -

67.     In December of 2016, Uniloc was unquestionably capable of providing the 2016 Assignment to defendants in litigations asserting the Patents.

68.     For example, on December 20, 2016, Uniloc informally produced a redacted copy of the 2016 Assignment to ████████ by email, but only after ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████ (Exhibit 12 (December 20, 2016 Correspondence between Uniloc and Valve) (filed under seal).)

69.     In contrast, Uniloc withheld the 2016 Assignment from other defendants with which it entered into lucrative settlements of litigations asserting the Patents.

70.     For example, on January 6, 2017, Uniloc reported to this Court that it had agreed to settle its litigation with Salesforce.com. (2:16-cv-741-RWS (E.D. Tex.) D.I. 127.) This Court dismissed the suit against Salesforce.com on January 10, 2017. (2:16-cv-741-RWS (E.D. Tex.) D.I. 128.)

71.     On information and belief, Salesforce.com was an IBM Strategic Partner as defined in the 2016 Assignment.

72.     However, prior to its settlement with Salesforce.com, Uniloc neither provided Salesforce.com or its counsel with a copy of the 2016 Assignment nor informed Salesforce.com or its counsel of IBM's reserved rights to sublicense the Patents to IBM Strategic Partners.

73.     In fact, Uniloc represented ████████████████████████ ████████████████████████████████████████████████████ ██████

████████████████

74.     On information and belief, Uniloc sued other companies for infringement of one or more of the Patents and subsequently settled those suits without providing those companies or their counsel with a copy of the 2016 Assignment and without informing those companies or their counsel of IBM's reserved rights to sublicense the Patents.

75.     As one example, on information and belief, Uniloc sued Carbonite, Inc. for infringement of one or more of the Patents and then settled that suit without providing Carbonite, Inc. or its counsel with a copy of the 2016 Assignment and without informing them of IBM's reserved rights to sublicense the Patents.

76.     As another example, on information and belief, Uniloc sued GOG, LTD. for infringement of one or more of the Patents and then settled that suit without providing GOG, LTD. or its counsel with a copy of the 2016 Assignment and without informing them of IBM's reserved rights to sublicense the Patents.

77.     Uniloc never produced a copy of the 2016 Assignment to ADP's counsel until May 23, 2017. (*See* Exhibit 2 (July 17, 2017 Email from J. Foster to M. Moffa).)

78.     Uniloc first produced the 2016 Assignment in its case with ADP only after the Court's May 18, 2017 deadline for the completion of document production.

79.     When Uniloc finally produced a copy of the 2016 Assignment to ADP, it was designated by Uniloc as "Attorneys Eyes Only" under the Protective Order entered in the case.

80.     ADP's counsel subsequently asked Uniloc to redesignate the 2016 Assignment as "Confidential" so that ADP's counsel could discuss it with ADP's in-house attorneys, noting that the Attorneys Eyes Only designation was impeding their ability to advise their client "regarding its license and indemnification rights thereunder." (Exhibit 2.)

81.     Uniloc's counsel delayed, and then refused ADP's request, even after ADP made clear to Uniloc that, under its counsel's analysis, ADP was "a Licensee under the agreement." (*Id.*)

82.     On July 19, 2017, after Uniloc's recalcitrance forced ADP to prepare a motion for redesignation, Uniloc finally agreed that a redacted copy of the 2016 Assignment could be shared with ADP's in-house counsel on a confidential basis. (Exhibit 3 (July 19, 2017 Email from M. Moffa to J. Foster).)

83.     Uniloc's May 23, 2017 production to ADP's counsel was not an oversight.

84.     Uniloc also waited until May 23, 2017 to first produce a copy of the 2016 Assignment to Big Fish Games, Inc.; BlackBoard, Inc.; Box, Inc.; and Zendesk, Inc. (as recently confirmed by Uniloc in a verified interrogatory response). Each was a defendant in a suit in this Court in which Uniloc asserted one or more of the Patents. In each such suit, Uniloc was subject to the same November 21, 2016 Docket Control Order and December 8, 2016 Discovery Order in ADP's case. Nevertheless, Uniloc waited until May 23, 2017, without explanation, to produce the 2016 Assignment to each such defendant, and produced the agreement with an Attorneys Eyes Only designation.

85.     Uniloc also waited until May 23, 2017 to first produce a copy of the 2016 Assignment to Bitdefender LLC; Piriform, Inc.; Ubisoft, Inc.; and Square Enix, Inc. (as recently confirmed by Uniloc in a verified interrogatory response). Each was a defendant in a suit in this Court in which Uniloc asserted one or more of the Patents. In each such suit, Uniloc was subject to a similar November 18, 2016 Discovery Order obligating Uniloc to "[w]ithout awaiting a discovery request . . . produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are

relevant to the pleaded claims or defenses involved in this action."  (2:16-cv-393-RWS (E.D. Tex.) D.I. 72, at 3.) Nevertheless, Uniloc waited until May 23, 2017, without explanation, to produce the 2016 Assignment to each such defendant, and produced the agreement with an Attorneys Eyes Only designation.

86.     Uniloc also waited until May 23, 2017 to first produce a copy of the 2016 Assignment to NetSuite Inc. and Nutanix, Inc. (as recently confirmed by Uniloc in a verified interrogatory response). Each was a defendant in a suit in this Court in which Uniloc asserted one or more of the Patents. In each such suit, Uniloc was subject to a February 16, 2017 discovery order obligating Uniloc to "[w]ithout awaiting a discovery request . . . produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action."  (2:16-cv-862-RWS (E.D. Tex.) D.I. 60, at 3.) Moreover, on April 3, 2017, ████████████████████████████████████████████████████ ████████████████████████████████████ (Exhibit 13 (April 3, 2017 Nutanix Correspondence) (filed under seal).) Nevertheless, Uniloc waited until May 23, 2017, without explanation, to produce the 2016 Assignment to Nutanix, Inc. and NetSuite Inc., and produced the agreement with an Attorneys Eyes Only designation.

87.     Uniloc's delay was particularly egregious because, nearly a year earlier, counsel for Ubisoft, Inc. had repeatedly asked Uniloc to produce the 2016 Assignment (and had further asked Uniloc to make it available to other defendants in cases in which Uniloc was asserting the Patents), and Uniloc's counsel—the same counsel who represented Uniloc in its suit against ADP—had refused.

88.     On June 28, 2016, counsel for Ubisoft, Inc. wrote to Uniloc's counsel "seeking to obtain an agreement referenced in the publicly-recorded assignment records of the patents-in-suit."  Counsel continued, "Specifically, we are seeking a copy of the the [sic] document referred to as 'Patent Assignment Agreement Reference No. L169512' in the attached Patent Assignment and Reservation with an effective date of Feb. 3, 2016. If you could produce this by end of day tomorrow, we would appreciate it. To the extent Uniloc considers it to be confidential, we would agree to treat it as AEO under LPR 2-2. If Uniloc either cannot or will not produce it to us at this time, please let me know why and provide times that you're available to discuss."  (Exhibit 14 (September 13, 2016 Correspondence Between Uniloc and Ubisoft, with prior messages inline) ("Ubisoft Correspondence") at 5.)

89.     Uniloc's counsel responded the same day by refusing to provide the 2016 Assignment to Ubisoft or its counsel. (*Id.* at 4.)  Uniloc's counsel argued *inter alia* that Uniloc did not intend to produce the documents since "neither a protective order nor a discovery order has been entered" and "initial disclosures have yet to be served." (*Id.*)

90.     On July 19, 2016, counsel for Ubisoft, Inc. again requested the 2016 Assignment from Uniloc's counsel, explaining that the request "is related to our assessment of standing and whether there are any issues related to standing that we need to resolve at the outset of this case." Counsel for Ubisoft Inc. also asked for "any other documents that relate to or refer to the document identified below that involve the asserted patents," noting that "[t]hese documents will more than likely be produced by Uniloc once this case gets started in earnest, so we do not see any valid reason to delay production so that we can inform our assessment."  (*Id.* at 3.)

91.     Uniloc's counsel did not provide the 2016 Assignment in response. Instead, Uniloc's counsel represented that it would "discuss [the] request" with Uniloc. (*Id.* at 3.)

92.     Receiving no further response, counsel for Ubisoft, Inc. repeated its requests to Uniloc's counsel on July 27, 2016; August 3, 2016; and August 18, 2016. (*Id.* at 2–3.)

93.     Ultimately, counsel for Uniloc responded on August 18, 2016 that it was "in the process of preparing a production responsive to your request." (*Id.* at 2.)

94.     On August 23, 2016, counsel for Uniloc provided a single email attachment to Ubisoft Inc.'s counsel "responsive to Ubisoft's request." (*Id.* at 1.) The forwarding email specified that the attachment was "to be viewed only by outside counsel of record for Ubisoft in Case No. 2:16-cv-00397." (*Id.* at 1.)

95.     However, that attachment was not the 2016 Assignment. Rather, Uniloc had provided █████████████████████████████████████████████

████████████████████████████████████████████████

96.     Moreover, despite its misleading designation, that attachment was not "HIGHLY CONFIDENTIAL" but in fact had already been publicly recorded in identical form at the U.S. Patent and Trademark Office on June 28, 2016. (*Compare* Exhibit 15 *with* Exhibit 16 (Corrective Assignment Recorded June 28, 2016).)

97.     Counsel for Ubisoft, Inc. responded nine minutes later, stating, "We had actually asked for the Patent Assignment Agreement executed in February 2016. Could you please produce that, also?" (Ubisoft Correspondence at 1.)

98.     Counsel for Uniloc did not respond to Ubisoft's request.

99.     Approximately three weeks later, on September 13, 2016, counsel for Ubisoft, Inc. sent an email "following up" on its request, writing, "Would Uniloc provide the actual Patent Assignment Agreement?  Also, I am assuming Uniloc would be amenable to providing these agreements to outside counsel of record in related cases concerning these patents. The

easiest way would be for Uniloc to just make the production to all counsel in the related cases. If not, I'll let folks know they need to each contact you directly." (Ubisoft Correspondence at 1.)

100.    Counsel for Uniloc never responded to Ubisoft's September 13, 2016 email and never provided the 2016 Assignment to Ubisoft until May 23, 2017, notwithstanding the entry of a protective order and discovery order and the service of initial disclosures shortly thereafter.

101.    In sum, Uniloc's failure to produce the 2016 Assignment to ADP and the other defendants in its litigations asserting the Patents demonstrates a pattern of intentional delay.

102.    Remarkably, when later asked at a May 21, 2018 hearing in this Court why the 2016 Assignment was not produced to ADP at the beginning of the suit, Uniloc's counsel responded that the 2016 Assignment "was produced to other Defendants." (2-16-cv-741 (E.D. Tex.), D.I. 307 at 40-41.)

103.    Uniloc's counsel specifically mentioned "Ubisoft" as one such recipient and further averred that "there was simply an oversight that [the 2016 Assignment] didn't get produced in this case" (*i.e.* to ADP) and that "when the oversight was discovered, it was given to them." (*Id.* at 41.)

104.    Such representations are contradicted by the factual record set forth above.

**D.    Uniloc Bargains with IBM for Additional Patents before Releasing ADP from Suit**

105.    Once ADP's in-house counsel learned in 2017 of IBM's reserved rights to sublicense the Patents, in-house counsel contacted IBM. ADP's in-house counsel confirmed that ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years preceding the 2016 Assignment, and asked IBM why ADP had been listed in List A of Exhibit C of the 2016 Assignment.

106.    IBM then approached Uniloc to request that Uniloc settle its suit against ADP. (*See Uniloc v. ADP,* 18-1132 (Fed. Cir.) D.I. 46-1 at 1.)

107.    From July, 2017 through September, 2017, ADP and its counsel repeatedly raised to Uniloc the argument that ADP should be properly licensed and released from suit as an IBM customer, including at an August, 2017 court-ordered mediation attended by representatives of both parties.

108.    Nevertheless, from July, 2017 through September, 2017, Uniloc maintained its suit against ADP, even though (as this Court has stated) Uniloc could have filed a motion for a 30-day stay of the case pending settlement negotiations. (2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 12.)

109.    Uniloc even continued to litigate against ADP after a September 1, 2017 deposition at which Uniloc's counsel was present, in which an IBM corporate representative testified on behalf of IBM that ███████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████ (Exhibit 17 (Excerpts from September 1, 2017 Deposition Testimony of Keith Walker) at 108-109 (filed under seal).)

110.    Uniloc even continued to litigate against ADP after a September 6, 2017 deposition before *inter alia* Uniloc's counsel in which ADP's corporate representative testified that ADP had spent over ███████████████ over the past five years, far above the threshold for an IBM Strategic Partner. (2:16-cv-741-RWS (E.D. Tex.), D.I. 298-1.)

111.    Uniloc would later rely on that same September 6, 2017 testimony to represent to this Court that "ADP had bought from, or sold to, IBM a sufficient amount of goods or services to meet the sublicense eligibility threshold in [the 2016 Assignment]."  (2:16-cv-741-RWS (E.D. Tex.) D.I. 297, at 5-6.)

112. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

113. On information and belief, during the period from July, 2017 through September, 2017, Uniloc conducted private negotiations with IBM for the assignment of 26 additional IBM patents to Uniloc in exchange for Uniloc's consent to remove "ADP" from List A of Exhibit C.

114. Uniloc withheld from ADP the details of its negotiations with IBM and withheld from this Court the fact that a forthcoming amendment to the assignment agreement would have (in Uniloc's view) affected its standing to maintain this case. (2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 12.)

115. On September 27, 2017, Uniloc and IBM executed an amendment to the 2016 Assignment which purported to confirm IBM's right to license ADP under the 2016 IBM-Uniloc Assignment by removing "ADP" from List A of Exhibit C. (Exhibit 19 ("2017 Amendment") at 1; 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 2; Uniloc May 21 Slides at 3.)

116. That amendment also removed other names of companies which, on information and belief, were IBM Strategic Partners or otherwise fit one of the six enumerated classes of entities entitled to sublicenses, releases, and/or covenants from IBM under the 2016 Assignment, including "ABB Ltd.," "Cerner," "Fiserv," and "Misys." (2017 Amendment at 1; Uniloc May 21 Slides at 3.)

117. Uniloc did not provide the 2017 Amendment to ADP upon execution, nor at any time until January 3, 2018.

118. On October 1, 2017, IBM assigned 26 patents to Uniloc Luxembourg S.A. (Exhibit 4 (Patent Office Recordation of IBM Assets Assigned to Uniloc).)

▮▮▮▮▮▮▮▮▮▮▮▮

119.    On information and belief, these patents were assigned to Uniloc Luxembourg S.A. in exchange for Uniloc Luxembourg S.A.'s agreement to execute the 2017 Amendment. (*See* 18-1132 (Fed. Cir.) D.I. 46-1 at 1 ("In return for certain consideration from IBM, Uniloc agreed to dismiss the ADP action with prejudice.").)

**E.     ADP Receives a License from IBM, but Uniloc Refuses to Dismiss ADP from Suit and Instead Continues to Subject ADP to Litigation**

120.    At least as of September 27, 2017, Uniloc Luxembourg S.A. and Uniloc USA Inc. each understood ADP to be a third party to which IBM reserved the right under the 2016 Assignment to grant licenses, immunities, covenants not to sue, and other rights under the Patents.

121.    As Uniloc would later represent to this Court, the amendment of September 27, 2017 "gave IBM the right to sublicense and release ADP, because ADP had bought from, or sold to, IBM a sufficient amount of goods or services to meet the sublicense eligibility threshold in the Agreement." (2:16-cv-741-RWS (E.D. Tex.) D.I. 297, at 5-6.)

122.    As Uniloc would also represent to this Court, "By virtue of the September 27, 2017, Amendment, ADP had the ability to obtain a license from another party (IBM) with the right to grant it." (2:16-cv-741-RWS (E.D. Tex.) D.I. 302 at 1.)

123.    Moreover, Uniloc knew or should have known at all times relevant to this complaint that ADP had purchased at least $10,000,000 of IBM's products or services (cumulative) over the five years preceding the 2016 Assignment or otherwise fit one of the six enumerated classes of entities entitled to sublicenses, releases, and/or covenants from IBM under the 2016 Assignment and thus was entitled to a license from IBM, notwithstanding Uniloc's improper inducement of IBM to accede to the listing of "ADP" on List A of Exhibit C to the 2016 Assignment prior to September 27, 2017.

124.     Nevertheless, Uniloc did not dismiss its suit against ADP on September 27, 2017 or at any time thereafter.

125.     In fact, Uniloc did not even inform the Court of the 2017 Amendment—even though Uniloc believed that such Amendment affected its standing to maintain a suit against ADP —until over three months after the 2017 Amendment was executed. (2:16-cv-741-RWS (E.D. Tex.) D.I. 297, at 6; 2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 12–13.)

126.     Uniloc did not provide the 2017 Amendment to ADP until January 3, 2018.

127.     On September 28, 2017, this Court entered an order finding all claims of the Patents asserted against ADP to be drawn to unpatentable subject matter under 35 U.S.C. § 101. (2:16-cv-741-RWS (E.D. Tex.) D.I. 267.) A corresponding Final Judgment was entered in favor of ADP on October 20, 2017. (2:16-cv-741-RWS (E.D. Tex.) D.I. 269.)

128.     On October 27, 2017, IBM granted a complete license and release to the Patents to Automatic Data Processing, Inc. with a right to grant sublicenses to its subsidiaries, including ADP. (2:16-cv-741-RWS (E.D. Tex.) D.I. 310 at 2 n.1.)

129.     Uniloc has since admitted that ADP is licensed and released under the Patents. (*See* 18-1132 (Fed. Cir.) D.I. 36 ("Uniloc agrees with ADP that the appeal has become moot, by virtue of the license and release from IBM.").)

130.     Nevertheless, Uniloc did not inform ADP of the existence of the 2017 Amendment upon its execution on September 27, 2017, nor at any time before January 3, 2018, even though Uniloc believed the 2017 Amendment to be relevant to ADP's rights under Section 4.3 and other sections of the 2016 Assignment.

131.     Uniloc also did not inform ADP that its name had been removed from List A of Exhibit C of the 2016 Assignment before January 3, 2018, even though Uniloc believed the 2017

Amendment to be relevant to ADP's rights under Section 4.3 and other sections of the 2016 Assignment.

132.    Rather, between September 28, 2017 and November 20, 2017, Uniloc twice requested that ADP consent to vacatur of this Court's September 28, 2017 order and waiver of its rights to attorneys' fees, without informing ADP that, at least in Uniloc's view, ADP's rights had changed under the 2016 Assignment by virtue of the 2017 Amendment.

133.    Uniloc's failure to produce or provide the 2017 Amendment to ADP was not an oversight.

134.    Indeed, as Uniloc recently confirmed in a verified interrogatory response in this action, it is unaware of *any* communications in which it has ever produced or provided the 2017 Amendment to *any* other company sued by Uniloc for infringement of one or more of the Patents.

135.    On November 20, 2017, Uniloc appealed the October 20, 2017 final judgement in favor of ADP. (2:16-cv-741-RWS (E.D. Tex.) D.I. 280.)

136.    On November 27, 2017, ADP's counsel contacted Uniloc's counsel and informed him that IBM had granted ADP a complete license and release to all patents in that suit. (Exhibit 5 (November 27, 2017 email to Paul Hayes).) ADP's counsel insisted that Uniloc withdraw its appeal against ADP, and cautioned that if Uniloc did not, ADP "would seek to recover from Uniloc" *inter alia* "fees incurred in this campaign, under all governing agreements (including section 4.3 of the [2016 Assignment])." (*Id.*)

137.    Nevertheless, Uniloc did not withdraw its appeal against ADP on November 28, 2017 or at any time thereafter.

138.    On January 5, 2018, ADP moved the Federal Circuit to dismiss Uniloc's appeal. (18-1132 (Fed. Cir.) D.I. 29.) Uniloc opposed ADP's motion. (18-1132 (Fed. Cir.) D.I. 36.)

139.    Separately, on January 11, 2018, Uniloc filed an emergency motion in this Court seeking an indicative ruling that the Court had lacked jurisdiction to issue its September 28, 2017 order in favor of ADP since, in Uniloc's view, Uniloc USA, Inc. lost standing on September 27, 2017 to sue ADP once ADP held the right to obtain a license from IBM. (2:16-cv-741-RWS (E.D. Tex.) D.I. 218; *see also* D.I. 302.) ADP responded to Uniloc's motion on January 18. Additional briefing on the motion was provided by Uniloc and ADP in April and May of 2018, and a motion hearing was held.

140.    On June 27, 2018, this Court denied Uniloc's motion in its entirety, on the basis that the owner of the Patents, Uniloc Luxembourg S.A., was at all times a party with standing to sue ADP for infringement. (2:16-cv-741-RWS (E.D. Tex.) D.I. 310.)

141.    On August 2, 2018, the Federal Circuit granted ADP's motion and dismissed Uniloc's appeal against ADP and awarded ADP its costs. (18-1132 (Fed. Cir.) D.I. 49.)

## F.    ADP Demands That Uniloc Indemnify ADP under Section 4.3 of the 2016 Assignment

142.    On January 12, 2018, (nine days after Uniloc first provided the 2017 Amendment to ADP), ADP wrote Uniloc to demand that Uniloc indemnify ADP from "all losses, costs, and expenses from September 28, 2017 through the present day arising from Uniloc's maintenance of its claims against ADP" pursuant to section 4.3 of the 2016 Assignment. (Exhibit 6 (January 12, 2018 Letter from ADP to Uniloc Demanding Indemnification).)

143.    ADP made clear that its demand "extend[ed] to all losses, costs, and expenses which may yet be accrued in this matter until such time as Uniloc ceases to maintain its claims against ADP under" the Patents. (*Id.*)

144.    ADP also directed Uniloc to the 60-day deadline for payment in Section 2.1 of the 2016 Assignment, which if not met by Uniloc would result in IBM receiving the right to license all "third parties involved in any activities relating to or arising from defense, enforcement, or licensing" under any of the Patents. (*Id.*)

145.    Uniloc did not respond to ADP's January 12, 2018 letter, and did not indemnify ADP. (*See* 5:19-cv-15-RWS (E.D. Tex.) D.I. 54 at 2 ("Uniloc refused to indemnify ADP").)

146.    On January 28, 2019, ADP reminded Uniloc that "ADP is entitled to indemnification from Uniloc for *all* losses, costs, and expenses arising from its claims, from July 8, 2016 through the present day, without exception," because Uniloc "has known since at least September 27, 2017 that ADP was a Licensee as defined in the Agreement" but "[n]evertheless . . . maintained multiple claims against ADP for almost a year thereafter, through August 2, 2018." (Exhibit 7 (January 28, 2019 Letter from ADP to Uniloc Demanding Indemnification).)

147.    To date, Uniloc has not responded to ADP's January 28, 2019 letter nor agreed to indemnify ADP. (*See* 5:19-cv-15-RWS (E.D. Tex.) D.I. 54 at 2 ("Uniloc refused to indemnify ADP").)

148.    In subsequent pleadings in this case, Uniloc has repeatedly argued that its legal claims against ADP were brought and maintained to avoid "prejudice to Uniloc's claims against other defendants" (5:19-cv-15-RWS (E.D. Tex.) D.I. 23 at 14), and "to preserve its appellate rights against other defendants." (5:19-cv-15-RWS (E.D. Tex.) D.I. 63 at 17).

149.    That theory is undermined by the actions of the Federal Circuit in the 18-1132 Action, in which it: (i) dismissed Uniloc's appeal against ADP on August 2, 2018 with no prejudice to Uniloc; (ii) branded as "misplaced" Uniloc's contention that it could not obtain a

vacatur of this Court's judgment unless it maintained an appeal against ADP; and then (iii) granted Uniloc the relief it sought in an order issued nine months after ADP had been dismissed.

150.    Even under Uniloc's argument, its maintained claims against ADP were no more than an "efficient breach" of Uniloc's indemnity obligation as against ADP to better improve its odds of recovering more from other defendants were its appeal to succeed. But even in an "efficient breach," nothing in the 2016 Assignment, the 2017 Amendment, or New York law allows Uniloc to repudiate its indemnity obligations to ADP.

**G.      Uniloc Relies on ADP's Status as a Licensee to Obtain Vacatur of This Court's September 28, 2017 Judgment in Favor of ADP Invalidating the Patents**

151.    In briefs filed on August 22, 2018, and October 30, 2018, Uniloc asked the Federal Circuit to vacate this Court's September 28, 2017 judgment in favor of ADP invalidating the Patents, on the argument that ADP, LLC and Automatic Data Processing, Inc. were third parties for which IBM had reserved or exercised sublicense rights under the 2016 Assignment as amended by the 2017 Amendment. (18-1132 (Fed. Cir.) D.I. 52 at 57-59; 18-1132 (Fed. Cir.) D.I. 67 at 26-28).

152.    On May 24, 2019, the Federal Circuit granted Uniloc's request and instructed this Court to vacate its September 28, 2017 judgment as to ADP only. (18-1132 (Fed. Cir.) D.I. 97 at 8-9.)

153.    Significantly, the Federal Circuit granted Uniloc's request for vacatur months after dismissing Uniloc's appeal against ADP as moot *ab initio*, 18-1224 (Fed. Cir.), thereby confirming that there was no need to bring or maintain that appeal against ADP in order for Uniloc to pursue its request for vacatur.

154.    On August 22, 2019, this Court vacated its September 28, 2017 judgment as to ADP only and dismissed ADP from the 2:16-cv-741-RWS litigation.

**H.     Uniloc Continues to Sue IBM Strategic Partners on the Patents Without Providing Them a Copy of the 2016 Assignment**

155.    On June 7, 2019, Uniloc sued Akamai Technologies, Inc. ("Akamai") on two of the Patents, 1:19-cv-11276 (D. Mass.).

156.    Uniloc had previously sued Akamai on the Cox Patents in this Court on May 9, 2017, 2:17-cv-375 (E. D. Tex.), in a case that was consolidated with 2:16-cv-1316 (E.D. Tex.) and subsequently dismissed on August 16, 2017.

157.    Uniloc had also previously sued Akamai on the Cox Patents in the Northern District of Texas on August 11, 2017, 3-17-cv-02118 (N.D. Tex.), in a case that was dismissed without prejudice on October 10, 2017.

158.    According to Akamai, each Uniloc entity that sued Akamai has been managed by Craig Etchegoyen (CEO of Uniloc Luxembourg S.A. in its suit against ADP) and has been represented by the same counsel at Prince Lobel Tye (the same counsel who represented Uniloc in its suits against ADP, Ubisoft, and others). (1:19-cv-11276, D.I. 28 (Memorandum of Law In Support of Akamai's Motion for Judgment On The Pleadings) at 9.)

159.    Further, according to Akamai, in each case in which it was sued by Uniloc in Texas, Uniloc demanded that Akamai pay a significant settlement and then dismissed the case, without producing the 2016 IBM Assignment. (*Id.*) Further, according to Akamai, in its current suit Uniloc misrepresented (just as it did to ADP) that it "does not currently have in effect any indemnity or insurance agreements relevant to this lawsuit."

160.    Uniloc concedes that it did not provide Akamai with a copy of the 2016 Assignment in any of the above suits at any time before September 12, 2019.  (1:19-cv-11276, D.I. 28 (Memorandum of Law In Support of Akamai's Motion for Judgment On The Pleadings) at 4 n.2.)

161.     Notably, Uniloc failed to provide Akamai with a copy of the 2016 Assignment in its prior litigations in this Court, 2:17-cv-375 (E. D. Tex.) and 2:16-cv-1316 (E.D. Tex.) even though Uniloc was subject to an April 13, 2017 Discovery Order obligating Uniloc to "[w]ithout awaiting a discovery request . . . produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action," and even though Uniloc produced the 2016 Assignment to ADP and other defendants on the Patents on May 23, 2017. (2:16-cv-1316-RWS (E.D. Tex.) D.I. 32, at 3.)

162.     On information and belief, Akamai is an "IBM Strategic Partner" and "Licensee" under the 2016 Assignment.  (1:19-cv-11276 (D. Mass.) D.I. 37, at 2.) Akamai alleges that on September 6, 2019—on information and belief, only after Akamai became aware of the terms of the 2016 IBM Assignment through the instant litigation—it informed Uniloc that it was an IBM Strategic Partner and that Uniloc's suit against Akamai should be dismissed with prejudice. (1:19-cv-11276 (D. Mass.) D.I. 21, at 13.)

163.     In opposition, Uniloc has argued that it "was assured by IBM, in writing, [that] Akamai does 'not meet the definition of "IBM Strategic Partner." ' " (1:19-cv-11276 (D. Mass.) D.I. 41, at 1.)  Uniloc has further represented to this Court that it "had no reason to question IBM's representation, and thus reasonably relied on it in pursuing litigation against Akamai . . . through September 5, 2019," notwithstanding the September 1, 2017 acknowledgement by IBM's corporate representative that ██████████████████████████████████████████ ██████████████████████████████████████████ (*Id.*; Exhibit 17.)

164.     According to Akamai, Uniloc refuses to indemnify Akamai under the 2016 IBM Assignment. (1:19-cv-11276 (D. Mass.) D.I. 21, at 10.)

████████████████████

165.    Thus, from 2016 to the present, Uniloc—in its past and current corporate forms—has withheld, and continues to withhold, the 2016 IBM Agreement and information about IBM's retained rights in the Patents from potential IBM Strategic Partners, in pursuit of litigation settlements.

## FIRST CLAIM FOR RELIEF
**(Breach of the 2016 Assignment as Amended by the 2017 Amendment)**

166.    ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

167.    Uniloc is in breach of the 2016 Assignment as amended by the 2017 Amendment.

168.    Uniloc has been in breach since at least September 27, 2017, and in any event since November 15, 2017.

169.    Upon Uniloc's execution of the 2017 Amendment on September 27, 2017, Uniloc knew that ADP, LLC and Automatic Data Processing, Inc. were third parties to which IBM reserved rights under the February 3, 2016 assignment, as amended, to grant licenses, immunities, covenants not to sue, and other rights under the Patents.

170.    Uniloc also knew at the latest on November 15, 2017, upon receipt by Uniloc's counsel of an email from IBM, that ADP, LLC and Automatic Data Processing, Inc. were third parties to which IBM had granted a license to *inter alia* the Patents.

171.    Indeed, before the Federal Circuit, Uniloc has since relied on the fact that ADP, LLC and Automatic Data Processing, Inc. were third parties for which IBM had reserved or exercised sublicense rights under the 2016 Assignment as amended by the 2017 Amendment, in order to secure vacatur of this Court's judgment in favor of ADP invalidating the Patents.

172.    Despite knowing that ADP, LLC and Automatic Data Processing, Inc. were third parties for which IBM had reserved or exercised sublicense rights under the 2016 Assignment as

amended by the 2017 Amendment, Uniloc maintained claims under the Patents against ADP, LLC in the Eastern District of Texas on September 27, 2017, and continued to do so through August 21, 2019, when Uniloc consented to the dismissal of ADP from civil action 2:16-cv-741 (E.D. Tex.).

173.    Uniloc also brought and maintained claims under the Patents against ADP, LLC in the Federal Circuit Court of Appeals when Uniloc appealed the dismissal of civil action 2:16-cv-741 as against ADP, LLC on November 20, 2017 (No. 2018-1224) and thereafter maintained the appeal until the Federal Circuit dismissed the appeal and awarded ADP its costs on August 2, 2018.

174.    Uniloc's claims in this Court and in the Federal Circuit Court of Appeals caused ADP to incur "losses, costs, and expenses" of at least $1,626,027.00 in legal expenses, $236,795.82 in costs, and legal expenses and costs incurred in the instant litigation (including attorneys' fees) to recover these losses, costs, and expenses.

175.    Uniloc knew at least as early as September 27, 2017 that IBM reserved the right to grant ADP a sublicense and release under the Patents.

176.    Uniloc also knew by no later than November 15, 2017 that IBM had granted ADP a sublicense and release under the Patents.

177.    Uniloc nevertheless thereafter maintained its action against ADP in the Eastern District of Texas and brought and maintained an action against ADP in the Federal Circuit Court of Appeals.

178.    Accordingly, the 2016 Assignment as amended by the 2017 Amendment obligates Uniloc to indemnify ADP from "*all* losses, costs and expenses arising ***therefrom***" (including attorneys' fees and costs incurred before and after the breach).

179.    Further, had Uniloc timely produced the 2016 IBM Assignment to ADP, or otherwise informed ADP that IBM had the right to grant sublicenses and releases under the Patents, ADP would have secured a license and release from IBM and ended its litigation with Uniloc far earlier than October of 2017.  Such delay, whether intentional or unintentional, was wholly unjustified. As Uniloc and its counsel in the 16-cv-741 action are alone responsible for the delay in producing the 2016 IBM Assignment to ADP, Uniloc—not ADP—should pay the losses, costs, and expenses attributable to that delay.

180.    Despite multiple demands, Uniloc has refused to indemnify ADP. (*See* 5:19-cv-15-RWS (E.D. Tex.) D.I. 54 at 1-2.)

181.    Uniloc's failure to indemnify ADP, on September 27, 2017 and at all times thereafter, from all losses, costs, and expenses arising from the above claims, is a breach of section 4.3 of the 2016 Assignment as amended by the 2017 Amendment.

182.    As a direct and proximate result of Uniloc's breach of its indemnity obligations under the 2016 Assignment as amended by the 2017 Amendment, ADP has been damaged in the aggregate amount of at least approximately $1,862,882.82, together with prejudgment interest at the maximum rate permitted by law.

183.    ADP has been further damaged by having to incur attorneys' fees and other costs to protect its interests because of Uniloc's breach of its indemnity obligations under the 2016 Assignment as amended by the 2017 Amendment. ADP is entitled to recover those attorneys' fees and costs under the 2016 Assignment, or in the alternative under Tex. Civ. Prac. Rem. Code Ann. § 38.001(8), or in the alternative as a sanction for Uniloc's vexatious litigation against ADP.

184.    The 2016 Assignment as amended by the 2017 Amendment is a valid contract between IBM and Uniloc Luxembourg S.A.

185.    Uniloc Luxembourg S.A. breached the indemnity obligations under the 2016 Assignment as amended by the 2017 Amendment by *inter alia* maintaining claims against ADP under the Patents.

186.    Uniloc USA, Inc. served as Uniloc Luxembourg S.A.'s agent in breaching the indemnity obligations under the 2016 Assignment as amended by the 2017 Amendment by *inter alia* maintaining claims against ADP under the Patents.

187.    Uniloc USA, Inc. was also obligated to abide by terms that were the same as the indemnity obligations under the 2016 Assignment as amended by the 2017 Amendment.

188.    Indemnification clause 4.3 of the 2016 Assignment as amended by the 2017 Amendment was intended to directly and immediately benefit IBM customers like ADP subjected to infringement suits on patents for which IBM could license and/or release them.

189.    ADP is an intended third-party beneficiary of the 2016 Assignment as amended by the 2017 Amendment who has the right to sue for Uniloc's breach of its indemnity obligations.

**SECOND CLAIM FOR RELIEF**
**(Liability for Excessive Costs under 28 U.S.C. § 1927)**

190.    ADP incorporates by reference, as if fully set forth herein, the allegations contained in each of the preceding paragraphs.

191.    Uniloc maintained claims against ADP under the Patents from July 8, 2016 through at least August 2, 2018, causing ADP to incur "losses, costs, and expenses" of at least $1,626,027.00 in legal expenses, $236,795.82 in costs, and legal expenses and costs incurred in the instant litigation (including attorneys' fees) to recover these losses, costs, and expenses.

192.     Uniloc knew or should have known at filing that ADP was a large IBM customer. Uniloc also knew that the 2016 Assignment granted sublicense rights to certain IBM customers.

193.     Had Uniloc promptly provided the 2016 Assignment to ADP, ADP could have promptly pursued relief from IBM and resolved the case in its early stages.

194.     Instead, Uniloc withheld the 2016 Assignment from ADP and its in-house counsel for nearly a year from filing of the complaint, in violation of this Court's Docket Control Order and Discovery Order.

195.     In doing so, Uniloc's counsel unreasonably and vexatiously multiplied the proceedings in this case while seeking a settlement from ADP.

196.     ADP is entitled to all costs, expenses, and attorneys' fees incurred because of Uniloc's and its counsel's conduct.

## PRAYER FOR RELIEF

WHEREFORE, ADP prays for relief as follows:

Judgment against Uniloc Luxembourg S.A. and Uniloc USA, Inc. in the amount of at least $1,862,822.82, together with prejudgment interest at the maximum rate permitted by law, for breach of Uniloc's indemnity obligations and/or as a sanction by this Court for Uniloc's vexatious litigation against ADP;

A declaration that ADP is an indemnitee of Uniloc Luxembourg S.A. for all losses, costs, and expenses arising from claims maintained by Uniloc Luxembourg S.A. or Uniloc USA, Inc under the Patents;

A declaration that ADP is an indemnitee of Uniloc USA, Inc. for all losses, costs, and expenses arising from claims maintained by Uniloc Luxembourg S.A. or Uniloc USA, Inc under the Patents;

An award of all attorneys' fees incurred in this action pursuant to the 2016 Assignment as amended by the 2017 Amendment;

Alternatively, an award of all attorneys' fees incurred in this action pursuant to Tex. Civ. Prac. Rem. Code Ann. § 38.001(8), for which ADP shall make its presentment after Uniloc has been adjudged to have breached its contract;

Alternatively, an award of all attorneys' fees incurred in this action as a sanction by this Court for Uniloc's vexatious litigation against ADP;

An award of all costs and disbursements incurred in connection with this action;

An award of post-judgment interest at the maximum rate permitted by law;

An injunction preventing Uniloc Luxembourg S.A. and Uniloc USA, Inc. and their parents, subsidiaries, affiliates, and assigns from filing patent infringement litigations against ADP; and

Such other relief as the Court deems just and proper.

Dated: December 10, 2019

Respectfully submitted,

*/s/ William J. McCabe*
William J. McCabe
E-Mail: WMcCabe@perkinscoie.com
Matthew J. Moffa
E-Mail:  MMoffa@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY  10036
Telephone:  (212) 262-6900
Facsimile:  (212) 977-1649

Michael E. Jones
Texas Bar No.:  10929400
E-Mail:  mikejones@potterminton.com
Patrick C. Clutter
Texas Bar No. 24036374
E-Mail:  patrickclutter@potterminton.com
**POTTER MINTON, PC**
110 North College Suite 500
Tyler, TX 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846

**ATTORNEYS FOR PLAINTIFF
ADP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on December 10, 2019.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on December 10, 2019.

*/s/ William J. McCabe*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this complaint and its accompanying exhibits should be filed under seal because they contain material designated as confidential under the Protective Order approved and entered in this case on July 1, 2019 (D.I. 44).

*/s/ William J. McCabe*